UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL LOCKLEAR,

       Petitioner,

                                 Case No. 1:09-cv-924

v.                                  Hon. Robert J. Jonker

MARY K. BERGHUIS,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

       Petitioner, a prisoner currently incarcerated at a Michigan correctional facility, has filed a petition for writ of habeas corpus, pursuant to 28 U.S.C. § 2254.

### I.       Background

       On September 7, 2004, petitioner pled guilty to multiple charges filed in three different criminal actions pending in Mecosta County Circuit Court. In case no. 04-5268-FH ("5268"), petitioner pled guilty to home invasion in the first degree, M.C.L. § 750.110a(2), and conspiracy to home invasion in the second degree, M.C.L. § 750.110a(3). Re-Arraignment Trans. at p. 9 (Sept. 7, 2004) (docket no. 9). In case no. 04-5317-FH ("5317"), petitioner pled guilty to assault with intent to commit murder, M.C.L. § 750.83, home invasion in the first degree, M.C.L. § 750.110a(2), and assault with a dangerous weapon (commonly referred to as felonious assault, M.C.L. § 750.82. *Id.* at pp. 8-9. Finally, in case no. 04-5327-FH ("5327"), petitioner pled guilty to second-degree murder, M.C.L. § 750.317, attempted home invasion in the first degree, M.C.L. § 750.110a(2), and conspiracy to home invasion in the second degree M.C.L. § 750.110a(3). *Id.* at p. 8.

Petitioner pled guilty under a plea agreement which consisted of the following provisions. In case no. 5268, the government agreed to dismiss the habitual offender count. *Id.* at p. 4. In case no. 5317, the government agreed to dismiss counts two and five and a habitual offender count. *Id.* In case no. 5327, the government agreed to dismiss count four and a habitual offender count, and to add a count five for second-degree murder. *Id.* at pp.4-5.[1] The government also agreed to make two sentencing recommendations. First, the government recommended that petitioner should receive a life sentence in prison. *Id.* at pp. 4-5. Second, the government recommended that the home invasion counts should run concurrently with the other sentences. *Id.* at p. 5.

Petitioner filed a motion to withdraw his plea, but withdrew the motion at a hearing held on October 26, 2004. Motion Trans. (Oct. 25, 2004) (docket no. 10). Petitioner was sentenced on October 28, 2004. All sentences were to run concurrently with 254 days credit. Opinion at p. 1 (Oct. 25, 2007) (docket no. 15). In case no. 5268, petitioner received sentences as follows: home invasion in the first degree (95 to 240 months); and conspiracy to commit home invasion in the second degree (57 to 180 months). *Id.* In case no. 5317, petitioner received sentences as follows: assault with intent to commit murder (life in prison); home invasion in the first degree (140 to 240 months); and, assault with a deadly weapon (24 to 48 months). *Id.* In case no. 5327, petitioner received sentences as follows: second degree murder (life in prison); attempted home invasion in the first degree (38 to 60 months); and, conspiracy to commit home invasion in the second degree (100 to 180 months). *Id.*

---

[1] The transcript erroneously refers to this as case no. 5237 rather than 5327. Re-Arraignment Trans. at pp. 4-5.

Petitioner, through counsel, filed another motion to withdraw his plea in September 2005. Opinion at p. 1 (Jan. 27, 2006) (docket no. 12). Petitioner raised the following grounds in support of his motion:

> [Petitioner] was seriously depressed and suicidal at the time of his plea, such that he did not have the mental capacity to make a voluntary and informed choice as to his plea. A copy of a July 16, 2004 letter from his Community Mental Health therapists is attached, which attests to [petitioner's] mental state while being housed in the jail during pretrial proceedings. Additionally, counsel in her attached Affidavit makes a factual proffer as to the contents of [petitioner's] CMS file, which will show serious depression and suicidality [sic].

*Id.* at p. 3.

The government challenged both the substance and timeliness of the filing, asserting that as a procedural matter, the motion should be dismissed as untimely under MCR 6.311. *Id.* The court rejected the government's timeliness argument and addressed the merits of the motion. *Id.* at pp. 3-4. The Court noted that in a letter dated July 16, 2004 (approximately two months prior to petitioner's guilty plea), a program supervisor from Community Mental Health stated that petitioner had a history of suicide attempts, depression and a "death wish." *Id.* at p. 4. Despite the receipt of this letter, petitioner and his counsel decided to enter a guilty plea. *Id.* Petitioner apparently had second thoughts, and filed a motion to withdraw his guilty plea. *Id.* However, at the hearing on that motion, petitioner decided to withdraw the motion and proceed to sentencing. *Id.* After reviewing the procedural history, the trial court denied petitioner's second motion to withdraw the plea:

> From a review of the September 7, 2004 transcript of the plea proceeding and the representation of the parties in the materials submitted in this most recent motion to withdraw plea, the plea taking procedure complied with the Michigan Court Rules, and therefore complied with the Michigan Constitution and the United States Constitution. Moreover, the Court does not find that a nexus has been established between the described psychological concerns regarding [petitioner] and some infirmity, involuntariness, unknowing action, etc., regarding the plea taking procedure.

Accepting the representations of current counsel for [petitioner], Ms. Owens, set out in her affidavit, [petitioner] has not shown that he in fact was incapable, delusional, or disengaged when he entered his plea of guilty. And again, [petitioner] had experienced defense counsel who did not raise such concerns, and counsel's representation and competency has not been challenged.

The motion to withdraw the plea is denied.

*Id.* at p. 5.

Petitioner, through counsel, filed a delayed application for leave to appeal to the Michigan Court of Appeals raising one issue:

I. Whether the trial court abused its discretion in refusing to allow [petitioner] to withdraw his guilty plea where [petitioner] was so depressed and suicidal as to make his plea involuntary.

Delayed Appl. at p. 7 (docket no.12). The Michigan Court of Appeals denied the application for lack of merit in the grounds presented. *People v. Locklear*, No. 268509 (Mich. App. May 30, 2006) (docket no. 12). Petitioner filed a pro per application for leave to appeal to the Michigan Supreme Court, which included two claims in addition to the claim raised in the Michigan Court of Appeals:

I. The trial court abused its discretion in refusing to allow [petitioner] to withdraw his guilty plea where [petitioner] was so depressed and suicidal as to make his plea involuntary.

II. The trial court and prosecutors office violated [petitioner's] Due Process by excessively charging [petitioner] with incorrect Penal Code.

III. [Petitioner's] trial counsel was clearly ineffective in [assisting] and defending [petitioner].

Delayed Appl. (docket no. 14). The Michigan Supreme Court denied the application because it was "not persuaded that the questions presented should be reviewed by this Court." *People v. Locklear*, No. 131620 (Mich. Oct. 31, 2006) (docket no. 14).

On October 25, 2007, petitioner filed a motion for relief from judgment in the state

trial court pursuant to MCR 6.500 raising four issues:

I. Petitioner has a right to withdraw his guilty plea as it was involuntarily and unintelligently offered because of the ineffectiveness of trial counsel in contravention of his Sixth Amendment rights.

II. Petitioner has a right under the Fourteenth Amendment, to withdraw his guilty plea because of his actual innocence.

III. Petitioner has a right to withdraw his plea because his conviction violates his right against double jeopardy under the Fifth Amendment.

IV. Petitioner's appellate counsel's performance was ineffective and fell below the standard for effective representation under the Sixth Amendment by failing to raise obvious issues that would have resulted in a reversal of petitioner's conviction.

Opinion (Oct. 25, 2007) at p. 2 (docket no. 13). The trial court denied all four claims on the merits.

*Id.* at pp. 3-6.

Petitioner raised five issues in his application for leave to appeal to the Michigan

Court of Appeals:

I. The trial court abused its discretion in denial of [petitioner's] motion for relief from judgment such that it was a miscarriage of justice and violation of [petitioner's rights under the] 14th US Constitutional Amendment.

II. [Petitioner's] right to withdraw guilty plea that was tendered unintelligently and involuntarily by ineffective assistance of trial counsel in violation of [petitioner's] 6th Amendment (U.S.C.A.) [rights].

III. [Petitioner has a] right to withdraw plea to charge due to actual [innocence], under the 14th Amendment (U.S.C.A.).

IV.     [Petitioner has a] right to withdraw [his] plea due to violation [ of his]
        right against double jeopardy in violation of [his] 5th Amendment
        (U.S.C.A.) [rights].

V.      Appellate counsel was ineffective for failing to raise obvious issues
        that would have resulted in reversal; [the] representation [fell] below
        the objective standard of the 6th Amendment (U.S.C.A.).

Delayed Appl. (docket no. 13). The Michigan Court of Appeals denied the application "for lack of
merit in the grounds presented." *People v. Locklear*, No. 287820 (Mich. App. Dec. 30, 2008)
(docket no. 13).

        Petitioner raised the same five issues in his application for leave to appeal to the
Michigan Supreme Court, which denied that application because petitioner "failed to meet the
burden of establishing entitlement to relief under MCR 6.500(D)." *People v. Locklear*, No. 138250
(Mich. Aug. 6, 2009) (docket no. 15).

        Locklear then sought habeas relief in this Court, raising five issues:

I.      Conviction obtained by plea of guilty which was not made
        voluntarily due to petitioner's mental state at time of accepting plea.

II.     Conviction obtained by a violation of petitioner's constitutional right
        to the effective assistance of counsel where counsel failed to assert
        an available defense (self defense).

III.    Conviction obtained in violation of petitioner's right to withdrawal
        of plea based on claim of actual innocence of charged crime (2nd
        Degree Murder).

IV.     Conviction obtained in violation of the protection against double jeopardy.

V.      Conviction affirmed by the denial of effective assistance of appellate counsel.

Petition at ¶ 14.

        While petitioner included Issue IV, he declined to address this issue because "it does
not have any merit." Petition at p. 15. Petitioner subsequently sought to amend his petition to add

a new Issue IV alleging that he was actually innocent of the crime. *See* Order (docket no. 19). The Court denied this motion after observing that petitioner raised an actual innocence claim in Issue III. *Id.* The Court also directed respondent to file a supplemental response with respect to the actual innocence claim. *Id.* This matter is now before the Court on petitioner's Issues I, II, III and V.[2]

## II. Procedural default

Respondent contends that petitioner's Issues II, III and V are barred from habeas review under the procedural default doctrine. Where "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A procedural default "provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim, unless the petitioner can demonstrate cause and prejudice." *Gray v. Netherland*, 518 U.S. 152, 162 (1996). Not every state procedural rule will warrant application of the procedural default doctrine. Only a procedural rule that was "'firmly established and regularly followed' by the time as of which it [was] to be applied," *Ford v. Georgia*, 498 U.S. 411, 424 (1991), will support application of the doctrine. "For a habeas claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule, but the state court must also have based its decision on the procedural default." *Simpson v. Jones*, 238 F.3d 399, 407 (6th Cir. 2000).

---

[2] The court notes that Locklear had previously filed a petition for habeas relief which was dismissed for failing to exhaust state court remedies. *See Locklear v. Berghuis*, No. 1:09-cv-609 (W.D. Mich.) (Opinion and Judgment July 20, 2009) (docket nos. 2 and 3).

Petitioner first raised these issues in his post-conviction motion for relief from judgment brought pursuant to MCR 6.500 *et seq*. The trial court addressed these issues on the merits. The Michigan Court of Appeals denied leave to appeal for lack of merit. The Michigan Supreme Court denied applications for leave to appeal, because petitioner failed to meet the burden of establishing entitlement to relief under MCR 6.508(D). The Sixth Circuit has previously held that MCR 6.508(D) is a valid procedural bar for habeas purposes. *See Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Burroughs v. Makowski*, 282 F.3d 410, 414 (6th Cir. 2002); *Simpson*, 238 F.3d at 407-08; *Luberda v. Trippett*, 211 F.3d 1004, 1008 (6th Cir. 2000). However, in *Guilmette v. Howes*, 624 F.3d 286, 288 (6th Cir. 2010) (*en banc*), the Sixth Circuit held that brief orders which cite only MCR 6.508(D) – i.e., the type of order entered by the Michigan Supreme Court in this case – "are not explained orders invoking a procedural bar." In reaching this determination, the court observed that "Michigan practice confirms that brief orders citing Rule 6.508(D) in some cases refer to a petitioner's failure to meet his burden on the merits." *Guilmette*, 624 F.3d at 291. "Because the form orders in this case citing Rule 6.508(D) are ambiguous as to whether they refer to procedural default or denial of relief on the merits, the orders are unexplained." *Id.* Thus, courts "must look past such orders 'to the last reasoned state court opinion to determine the basis for the state court's rejection' of a petitioner's claim." *Skinner v. McLemore*, 425 Fed.Appx. 491, 495 (6th Cir. 2011), quoting *Guilmette*, 624 F.3d at 291. Here, the last reasoned state opinion was the trial court's order denying the motion for relief from judgment. In that order, the trial court addressed the merits of Issues II, III and V. Accordingly, petitioner's Issues II, III and V are not subject to the procedural default doctrine.

### III.        Standard of review under 28 U.S.C. § 2254

Petitioner seeks relief under 28 U.S.C. §2254, which provides that "a district judge shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." Before petitioner may seek such relief in federal court, however, he must first fairly present the substance of his claims to all available state courts, thereby exhausting all state remedies. *Picard v. Connor*, 404 U.S. 270, 277-78 (1981); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see* 28 U.S.C. §2254(b)(1)(A). Here, petitioner has exhausted the issues raised in his amended petition.

Where the state court has adjudicated a claim on its merits, the federal district court's habeas corpus review is limited by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which provides in pertinent part that:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication–
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, -- U.S. --, 130 S.Ct. 1855, 1862 (2010) (internal quotation marks omitted). "Under the 'contrary to' clause, a federal habeas court may grant the writ only if the state court arrived at a conclusion opposite to

that reached by the Supreme Court on a question of law, or if the state court decided the case differently than the Supreme Court has on a set of materially indistinguishable facts." *Jalowiec v. Bradshaw*, 657 F.3d 293, 301 (6th Cir. 2011), citing *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). "Under the 'unreasonable application' clause, a federal court may grant the writ only if the state court identified the correct governing legal principle from the Supreme Court's decisions but unreasonably applied that principle to the facts of the petitioner's case." *Id.* A court may not issue a writ of habeas corpus "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411. Rather, to grant habeas relief, the state court's application of the law must be found to be "objectively unreasonable." *Id.* at 409.

A determination of a factual issue by a state court is presumed to be correct. 28 U.S.C. § 2254(e)(1). A habeas petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence that the state court's determination was erroneous. *Magana v. Hofbauer*, 263 F.3d 542, 546-47 (6th Cir. 2001).

IV.    **Petitioner's habeas claims**

A.    **Petitioner's guilty plea**

The record reflects that the petitioner was aware of the maximum sentence imposed on all counts. Re-Arraignment Trans. at pp. 9-11. In addition, petitioner answered a number of questions which established that his plea was a voluntary, intelligent and knowing act. *Id.* at pp. 11-15. Specifically, petitioner testified that he was giving up the following rights: to a trial by a jury or a judge; to an appeal; to the presumption of innocence; to have the prosecutor prove his guilt beyond a reasonable doubt; to have witnesses against him produced at trial; to have his counsel

question or cross-examine these witnesses; to have any witnesses appear at trial to testify on his behalf; to have the court order such witnesses to testify; to testify at the trial; to remain silent; and, to have a separate hearing outside of the trial to determine the voluntariness of statements made by him regarding the charged offenses. *Id.* at pp. 11-13. Petitioner stated that he understood he was waiving these rights, and that once the judge accepted his guilty plea, the only question remaining is the sentence petitioner will receive. *Id.* Petitioner testified that: no one had made an agreement with him in exchange for his guilty plea outside of the plea agreement; that no one promised him anything to plead guilty; that no one threatened him to plead guilty. *Id.* at p. 13.

Petitioner understood that no one could make any promises as to his sentences and that he was not going to be sentenced at that hearing. *Id.* at pp. 13-14. Petitioner also understood that if his pleas are accepted, he was "giving up any claim that those pleas were the result of promises, threats or other inducements that were not discussed at the hearing" and that by pleading guilty, he was "giving up any claim that the choice to enter these pleas of guilty was not [his] choice." *Id.* at p. 14. Petitioner testified that it was his choice to plead guilty and that he did not want a trial. *Id.* at pp. 14-15. Petitioner also testified that in the last 24 hours, he did not consume any type of intoxicant, such as alcohol, narcotics, medication or other forms of controlled substances. *Id.* at p. 23.

Petitioner provided sufficient facts to establish that he committed each of the crimes involved in his guilty plea. Petitioner gave the following testimony regarding case no. 5268. Prior to February 10, 2004, petitioner had an agreement with two other people to attempt to break into a home located at 8646 80th Avenue in Mecosta County to commit a larceny. *Id.* at p. 16. On February 10, 2004, petitioner and those other two people broke into the basement of the home and

stole coins. *Id.* When they broke into the home, someone was lawfully residing in it. *Id.* at pp. 16-17.

Petitioner gave the following testimony regarding case no. 5327. On February 16, 2004, petitioner was riding by the house in an automobile driven by Shannon Sniff, when he determined that no one was home and that he could burglarize it again. *Id.* at pp. 17-18. This time, the door was open. *Id.* at p. 18. While in the home, petitioner got into a fight with Harold Kalbfleisch, and during the fight a firearm was discharged. *Id.* It was petitioner's understanding that Mr. Kalbfleisch died as a result of the gunfire. *Id.* Petitioner knew that when he went into the home to burglarize it, he created a very high likelihood of death or serious bodily injury. *Id.* at p. 19. Petitioner identified the house as the home of Mary Odell. *Id.* When he entered the house, the lights were off and there were no automobiles in the parking lot. *Id.* at pp. 19-20. Mr. Kalbfleisch was lawfully in the home at the time of this incident. *Id.* at p. 20.

Finally, petitioner gave the following testimony with respect to case no. 5317. On February 16, 2004, petitioner was at the home of Mark Brown in the Village of Barryton in Mecosta County. *Id.* at p. 21. Petitioner was at the house for the purpose of getting drugs. *Id.* Petitioner could not get admitted into the house. *Id.* Later, petitioner and Michael Rinckey broke into the house while armed for the purpose of stealing drugs. *Id.* While petitioner was in the house, he was confronted by Mark Brown. *Id.* at pp. 21-22. Petitioner shot Mark Brown with the intent to kill him. *Id.* at p. 22. Petitioner also pointed the weapon at another person at the house, Deyon Wilson. *Id.*

Petitioner testified that his action of pointing his weapon at Deyon Wilson would give Wilson, a reasonable person, reasonable fear for her life or great bodily harm. *Id.* Plaintiff testified that both Brown and Wilson were lawfully present in the home where these events occurred. *Id.*

The test for determining the validity of a guilty plea under the federal constitution is "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). *See Hart v. Marion Correctional Facility*, 927 F.2d 256, 257 (6th Cir. 1991) (to satisfy the dictates of due process, a plea "must be a voluntary, knowing, intelligent act"). For a defendant's plea of guilty to be voluntary, the defendant must be aware of the maximum sentence imposed. *See King v. Dutton*, 17 F.3d 151, 154 (6th Cir. 1994); *Riggins v. McMackin*, 935 F.2d 790, 795-96 (6th Cir. 1991); *Hart*, 927 F.2d at 259.

"A plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." *United States v. Broce*, 488 U.S. 563, 569 (1989). When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. *Tollett v. Henderson*, 411 U.S. 258 (1973). When a defendant pleads guilty, he "simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers," *McCarthy v. United States*, 394 U.S. 459, 466 (1969), and forecloses all subsequent non-jurisdictional appeals to his conviction, *United States v. Bahhur*, 200 F.3d 917, 923 (6th Cir. 2000).

When an offender seeks to reopen the proceeding after entering a guilty plea, "the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary." *Broce*, 488 U.S. at 569. In resolving a state criminal defendant's federal habeas petition challenging the voluntariness of a guilty plea, the state generally satisfies its burden of showing a voluntary plea by producing a written transcript of the state court proceeding. *See Garcia v. Johnson*, 991 F.2d 324, 326 (6th Cir. 1993). Where the transcript is adequate to show that the plea was voluntary and intelligent, a presumption of correctness attaches to the state court findings of fact. *Id.* A habeas petitioner "must overcome a heavy burden" to have a federal court overturn these state court findings. *Id.* at 328.

Here, the trial court found that petitioner was competent to offer the guilty pleas and accepted them. Re-Arraignment Trans. at p. 23. The transcript of petitioner's plea supports the trial judge's finding. *See Hill*, 474 U.S. at 56; *King*, 17 F.3d at 154 *Garcia*, 991 F.2d at 326; *Hart*, 927 F.2d at 257, 259.

### B. Petitioner's mental state (Issue I)

The trial court addressed petitioner's mental state in the opinion denying his motion to withdraw the plea. *See* Opinion (Jan. 27, 2006) (docket no.14). The court referenced a letter received by defense counsel and petitioner related to his mental health. *Id.* The letter noted that petitioner had ongoing depression, lives with a death wish and "has no desire to help in his own defense nor any plans to survive in prison." CMH Letter (July 16, 2004) (docket no. 14). As an initial matter, the court noted that petitioner did not seek a competency determination and that despite this letter, petitioner, assisted by counsel, decided to proceed with the guilty plea. Opinion (Jan. 27, 2006) at p. 4. When petitioner had second thoughts, he filed a motion to withdraw the

guilty plea with the assistance of counsel. *Id.* Then, petitioner, assisted by counsel, decided to withdraw his motion to withdraw the guilty plea and proceed to sentencing. *Id.* After reviewing the plea transcript and the materials submitted, the court (1) concluded that the plea procedure complied with the Michigan Court Rules, Michigan Constitution and United States Constitution, and (2) found that no "nexus has been established between the described psychological concerns regarding [petitioner] and some infirmity, involuntariness, unknowing action, etc., regarding the plea taking procedure." *Id.* at pp. 4-5.

The court agrees. "[D]epression alone is very unlikely to render a plea involuntary." *Tanner v. McDaniel*, 493 F.3d 1135, 1146 (9th Cir. 2007). *See Miles v. Dorsey*, 61 F.3d 1459, 1470 (10th Cir. 1995) ("[a]lthough deadlines, mental anguish, depression, and stress are inevitable hallmarks of pretrial plea discussions, such factors considered individually or in aggregate do not establish that Petitioner's plea was involuntary"). To prevail on his claim, petitioner would have to show that his depression rendered him unable to make the decision to plead guilty freely and intelligently. *Tanner*, 493 F.3d at 1146. Here, to the contrary, the record demonstrates that petitioner did not seek a competency hearing, that he voluntarily decided to plead guilty, and that he provided a coherent and lucid explanation of his criminal conduct.

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner's claim for relief should be denied.

### C.  Petitioner was actually innocent of the crimes (Issue III)

Petitioner contends that he was actually innocent of the crime because he acted in self defense.  Petitioner's free-standing claim of actual innocence is not cognizable on federal habeas review.  "[A] claim of 'actual innocence' is not itself a constitutional claim subject to federal habeas review, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." *Herrera v. Collins*, 506 U.S. 390, 404 (1993).  "A claim of actual innocence can only serve to excuse a procedural default so that a petitioner may bring an independent constitutional claim challenging his conviction or sentence." *Wright v. Stegall*, 247 Fed.Appx. 709, 711 (6th Cir. 2007).  Petitioner is not asserting his claim of actual innocence to excuse a procedural default.  Accordingly, petitioner's claim for relief should be denied.

### D.  Ineffective assistance of trial counsel (Issue II)

Petitioner contends that his trial counsel was ineffective for not investigating his claim of self-defense.  When a guilty plea is challenged on the basis of ineffective assistance of trial counsel, the court applies the two-prong test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Hill*, 474 U.S. at 58.  Under the *Strickland* test: (1) the defendant must show that counsel's performance was deficient and (2) the defendant must show that counsel's deficient performance prejudiced the defense.  *Strickland,* 466 U.S. at 687.  In the context of a guilty plea, the court "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Railey v. Webb*, 540 F.3d 393, 415-16 (6th Cir. 2008), quoting *Hill*, 474 U.S. at 58-59.  To prevail on the prejudice requirement, a habeas petitioner must demonstrate "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Premo v. Moore*, -- U.S. --, 131 S.Ct. 733, 743 (2011) (internal quotation marks

omitted). The reviewing court's scrutiny of counsel's performance is highly deferential, and the

court is to presume that counsel rendered adequate assistance and made decisions with reasonable

professional judgment. *Strickland*, 466 U.S. at 689-690.

Where a state criminal defendant has pled guilty, the court should closely scrutinize

a subsequent federal habeas claim that the guilty plea was invalid due to the alleged ineffective

assistance of trial counsel. As the court observed in *Premo*:

> Plea bargains are the result of complex negotiations suffused with uncertainty, and
> defense attorneys must make careful strategic choices in balancing opportunities and
> risks. . . .

> These considerations make strict adherence to the *Strickland* standard all the
> more essential when reviewing the choices an attorney made at the plea bargain
> stage. Failure to respect the latitude *Strickland* requires can create at least two
> problems in the plea context. First, the potential for the distortions and imbalance
> that can inhere in a hindsight perspective may become all too real. The art of
> negotiation is at least as nuanced as the art of trial advocacy and it presents questions
> farther removed from immediate judicial supervision. There are, moreover, special
> difficulties in evaluating the basis for counsel's judgment: An attorney often has
> insights borne of past dealings with the same prosecutor or court, and the record at
> the pretrial stage is never as full as it is after a trial. In determining how searching
> and exacting their review must be, habeas courts must respect their limited role in
> determining whether there was manifest deficiency in light of information then
> available to counsel. *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S.Ct. 838, 122
> L.Ed.2d 180 (1993). AEDPA compounds the imperative of judicial caution.

> Second, ineffective-assistance claims that lack necessary foundation may
> bring instability to the very process the inquiry seeks to protect. *Strickland* allows
> a defendant "to escape rules of waiver and forfeiture," *Richter*, --- U.S., at ----, 131
> S.Ct. 770. Prosecutors must have assurance that a plea will not be undone years later
> because of infidelity to the requirements of AEDPA and the teachings of *Strickland*.
> The prospect that a plea deal will afterwards be unraveled when a court
> second-guesses counsel's decisions while failing to accord the latitude *Strickland*
> mandates or disregarding the structure dictated by AEDPA could lead prosecutors
> to forgo plea bargains that would benefit defendants, a result favorable to no one.

*Premo*, 131 S. Ct. at 741-42.

Petitioner contends that his trial counsel did not pursue a self-defense strategy and advised him to plead guilty. The state trial court found that trial counsel was not deficient, because the self-defense claim was meritless. The state court observed: that the facts showed that petitioner entered the home with the intent to rob; that his actions caused a very high risk of death or bodily harm to the victim (Mr. Kalbfleisch) under Michigan law; that petitioner could not claim self defense under Michigan law because he was the aggressor and could have retreated; and, although the victim was killed with his own gun, that fact did not rise to the level of self-defense under Michigan law.[3] Opinion denying motion for relief from judgment at p. 3 (June 25, 2008) (docket no. 15). Given these facts, the court concluded that petitioner's counsel had no obligation to pursue a self-defense claim which was not valid. *Id.* at p. 4, citing *United States v. Cronic*, 466 U.S. 648, 657, fn 19 (2003) ("Of course, the Sixth Amendment does not require that counsel do what is impossible or unethical. If there is no bona fide defense to the charge, counsel cannot create one and may disserve the interests of his client by attempting a useless charade.").

Petitioner contends that a review of the lower court record, including the plea hearing, reflect that he never had a gun at the house and acted in self-defense. Petitioner's Memo at p. 10 (docket no. 2). Contrary to petitioner's claim, the plea transcript does not include testimony that he acted in self-defense. Rather, petitioner admitted that he got into a fight with the victim,

---

[3] The state court relied on the elements of self-defense as announced in *People v. Turner*, 37 Mich. App. 227, 229, 194 N.W.2d 546 (1971):

> In order to make out a case for self-defense three elements must be established: first, it must appear that the defendant was not the aggressor; second, it must appear to the defendant that he was in danger of suffering grievous bodily injury; and third, it must also be shown by evidence that there was no way open for the defendant to retreat and that his only safety was in repelling the attack by physical means.

during the fight a firearm was discharged and the victim died as a result of the gunfire. By entering a guilty plea, petitioner waived his right to claim self-defense.

> A guilty plea is more than a confession which admits that the accused did various acts. It is an admission that he committed the crime charged against him. By entering a plea of guilty, the accused is not simply stating that he did the discrete acts described in the indictment; he is admitting guilt of a substantive crime.

*United States v. Broce*, 488 U.S. 563, 570 (1989) (internal quotation marks and citations omitted).

Furthermore, petitioner has not demonstrated prejudice, i.e., that but for counsel's alleged error, there was "a reasonable probability that . . . he would not have pleaded guilty and would have insisted on going to trial." *Premo*, 131 S.Ct. at 743. Petitioner's conclusory assertion that he would not have pled guilty but for counsel's alleged errors, is insufficient to demonstrate prejudice. "A petitioner's conclusory allegation that, but for an alleged attorney act or omission, he would not have pleaded guilty is not enough to prove such a claim." *Garrison v. Elo*, 156 F.Supp.2d 815, 829 (E.D. Mich. 2001). Rather the petitioner "must show that there is a reasonable probability that the *result* of the proceeding would have been different." *Id.* (emphasis in original). *See Hill*, 474 U.S. at 60 (denying claim of ineffective assistance of trial counsel where the petitioner did not allege that if counsel had correctly informed him about his parole eligibility date, "he would have pleaded not guilty and insisted on going to trial"). Here, petitioner has presented no evidence to show that he would not have pled guilty but for counsel's advice. Nor has he presented evidence that there was a reasonable probability that a jury would have found him not guilty.

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Accordingly, petitioner's claim for relief should be denied.

### E.　Ineffective assistance of appellate counsel (Issue V)

Finally, petitioner contends that his appellate counsel was ineffective for failing to raise a claim of ineffective assistance of trial counsel. Appellate counsel enjoys a strong presumption that the alleged ineffective assistance falls within the wide range of reasonable professional assistance. *See Willis v. Smith*, 351 F.3d 741, 745 (6th Cir. 2003), *citing Strickland*. It is not necessary for appellate counsel to raise every non-frivolous claim on direct appeal. *Smith v. Murray*, 477 U.S. 527, 536 (1986); *Jones v. Barnes,* 463 U.S. 745 (1983). On the contrary,

> Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues.

*Jones*, 463 U.S. at 751-52. It is well-recognized that the effect of adding weak arguments to an appellate brief "will be to dilute the force of the stronger ones." *Id.* at 752, *quoting* R. Stern, *Appellate Practice in the United States* 266 (1981). "[I]f you cannot win on a few major points, the others are not likely to help, and to attempt to deal with a great many in the limited number of pages allowed for briefs will mean that none may receive adequate attention." *Id.*

To evaluate a claim of ineffective assistance of appellate counsel, the court assesses the strength of the claim appellate counsel failed to raise. *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). "Counsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir.2004). If there is a reasonable probability that petitioner would have prevailed on appeal had the claim been raised, then this court can consider whether the claim's merit was so compelling that appellate counsel's failure to raise it amounted to ineffective assistance of appellate counsel." *Id.* at 700.

The record reflects that appellate counsel was appointed to represent petitioner and raised one issue on appeal, i.e., whether the trial court abused its discretion in refusing to allow petitioner to withdraw his guilty plea because he was so depressed and suicidal as to make the plea

involuntary. The state trial denied petitioner's claim that appellate counsel was ineffective, noting that appellate counsel was not required to bring claims that were without merit. Opinion at p. 5 (June 25, 2008). While appellate counsel was unsuccessful, the single argument raised on appeal was not frivolous and was supported by some evidence that petitioner suffered from depression. However, as discussed in § III.E., petitioner's trial counsel had no basis to raise a self-defense claim (which petitioner sometimes refers to as his actual innocence claim). Appellate counsel cannot be ineffective for failing to raise an issue that lacks merit. *Willis*, 351 F.3d at 745; *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001). Under these circumstances, none of the alleged claims of ineffective assistance of trial counsel were "so compelling" that appellate counsel's failure to raise the claims amounted to ineffective assistance of appellate counsel.

The state court's decision was neither contrary to, nor an unreasonable application of, clearly established Federal law as determined by the Supreme Court; nor was the decision based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254 (d). Petitioner's claim for relief should be denied.

## IV. Recommendation

I respectfully recommend that petitioner's habeas petition be **DENIED**. Rule 8, Rules Governing § 2254 Cases in the United States District Courts.

Dated: January 31, 2013                    /s/ Hugh W. Brenneman, Jr.
                                           HUGH W. BRENNEMAN, JR.
                                           United States Magistrate Judge

ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).